**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**OXFORD DIVISION**

**MARK S. BUCKNER, SR.**                                                    **PLAINTIFF**

**V.**                                                                          **NO. 3:23-CV-417-DMB-RP**

**WEST TALLAHATCHIE SCHOOL**
**DISTRICT, et al.**                                                         **DEFENDANTS**

## OPINION AND ORDER

Mark S. Buckner, Sr., claims that the West Tallahatchie School District and certain of its employees and school board members failed to accommodate his disability, discriminated against him based on race, and retaliated against him for reporting such, in violation of the Americans with Disabilities Act and Title VII. Some of the named defendants who have appeared, including the School District, move to dismiss Buckner's claims against them for failure to state a claim. Because Buckner failed to exhaust all but one of his ADA claims and failed to exhaust his Title VII race discrimination claims, and because claims against individuals are unavailable under the ADA and Title VII, the motion to dismiss will be granted in part and denied in part.

## I
## Procedural History

On October 27, 2023, Mark S. Buckner, Sr., filed a pro se complaint in the United States District Court for the Northern District of Mississippi against the West Tallahatchie School District, "Mrs Ellinton - Superintendent,"[1] "Mr. Harges - Principal," "Ms. Berdin - Former Principal;" "Mr. Brownlow - Principal," "Assistant Principal - Ms. Spicer," "Madalyn Johnson - Business Manager," "Marvin George - President of Board," "Mrs. Edith Gipson - Board Member,"

---

[1] Though named "Mrs Ellinton" in the caption of the complaint, Buckner references this defendant's last name as "Ellington" in the body of the complaint. *See, e.g.*, Doc. #1 at 12, 14.

"Mrs. Sharon Bailey - Board Member," "Mrs. Lucinda Berryhill - Board member," and "Mrs. Cora Hooper - Board Secretary." Doc. #1. In his complaint, Buckner alleges the defendants violated the Americans with Disabilities Act ("ADA") and Title VII by not accommodating his vision impairment disability, discriminating against him based on his race, and retaliating against him "because [he] ha[s] filed previous charges of discrimination and ha[s] a pending lawsuit against this organization." *Id.* at 3.

On February 29, 2024, the School District, Ellington, Harges, Johnson, and Spicer—noting that they were the only defendants who then had been served—filed a motion to dismiss Buckner's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[2] Doc. #14. Approximately three weeks later, on March 20, 2024, Buckner filed "Plaintiff Mark S. Bucker Sr's Motion Objection to Defendant Motion to Dismiss Plaintiff's Civil Under 12(B)(6)," which the Clerk of the Court docketed as a response[3] opposing the motion to dismiss.[4] Doc. #22. The same day, Buckner filed "Plaintiff Mark S. Buckner Sr's Request Court to Bring a Personal Helper and Make the Non-Jury Trial to Read Jury Trial" ("Helper/Jury Motion"). Doc. #21. The defendants[5] did not respond to

---

[2] In a footnote in their motion to dismiss and in their memorandum briefs, the defendants state that for the same reasons the served defendants should be dismissed, Buckner's "claims should be dismissed against all defendants." Doc. #14 at 1 n.2; Doc. #15 at 1 n.2; Doc. #24 at 1 n.2. The Court declines to dismiss claims against named defendants who had not been served, had not appeared, and had not moved for dismissal at the time the present motion to dismiss was filed. The Court acknowledges that Bailey, Berryhill, George, Gipson, and Hooper were recently served and filed their own separate motion to dismiss on July 31, 2024. Doc. #45. That separate motion to dismiss will be addressed by separate order. As of July 11, 2024, Berdin and Brownlow have not been served. Doc. #39.

[3] Buckner's response to the motion to dismiss is untimely. *See* L.U. Civ. R. 7(b)(4). As a pro se litigant, Buckner's filings are liberally construed but he still must "reasonably comply" with the Court's rules. *Baughman v. Hickman*, 935 F.3d 302, 312 (5th Cir. 2019) (citation omitted). However, the Court will consider Buckner's untimely response for the sake of fully deciding the motion to dismiss on its merits, especially since the defendants' reply does not mention its untimeliness.

[4] The Clerk of the Court docketed as a memorandum opposing the motion to dismiss "Plaintiff Mark S. Buckner Sr's Affidavit Memorandum of Law in Objection to Defendant Motion to Dismiss Plaintiff's Civil Complaint Under Rule 12 (b) (6), Plaintiff Seeks Permission to Exceed Page Limit,[]No More Than 10 Pages." Doc. #23. Local Rule 5 requires that a memorandum brief not exceed thirty-five pages. Because Buckner's memorandum brief is twenty-two pages, any request by him to exceed the page limit is unnecessary.

[5] The Court's use of "the defendants" in analyzing the present motion to dismiss refers only to those defendants who filed the present motion to dismiss.

the Helper/Jury Motion.

On March 28, 2024, the defendants replied in support of their motion to dismiss.  Doc. #24.
Buckner filed on April 10, 2024, "Plaintiff Mark S. Buckner Sr's Request for Permission to
Respond to Defendant Reply Memorandum Motion to Dismiss" ("Surreply Motion").  Doc. #27.
The defendants did not respond to the Surreply Motion.[6]

## II
## Surreply Motion

In the Surreply Motion, Buckner argues that "the defendant was trying to convince this
court that the language in the EEOC charge … is not the exact language on that document" so he
"seek[s] permission to address this issue …."[7]  Doc. #27 at 2.  Buckner does not argue that the
defendants' reply presents a new legal theory or new evidence.  *See GA. Firefighters' Pension
Fund v. Andarko Petrol. Corp.*, 99 F.4th 770, 774 (5th Cir. 2024) ("when a party raises new
arguments or evidence for the first time in a reply, the district court must either give the other party
an opportunity to respond or decline to rely on the new arguments and evidence").  And because
Buckner's EEOC charge is attached to his complaint as an exhibit and speaks for itself, and
because the Court can read the EEOC charge to resolve any arguments about what it states,[8] there
is no need for Buckner to "address" in a surreply what the EEOC charge says.  The Surreply
Motion is denied.

## III
## Motion to Dismiss

In moving to dismiss Buckner's complaint for failure to state a claim against them pursuant

---

[6] Buckner filed a motion to amend his complaint on May 24, 2024.  Doc. #30.  Judge Percy denied the motion because
Buckner did not attach a proposed amended complaint to the motion as required by Local Rule 15.  Doc. #36.

[7] Buckner did not attach a proposed surreply to the Surreply Motion.

[8] Buckner seems to recognize that the Court can determine what and what not the EEOC charge says by simply reading
it.  *See* Doc. #27 at 2 ("Clearly if this court read the EEOC charge the language is recorded ….").

to Rule 12(b)(6),[9] the defendants argue that (1) Buckner's ADA claims should be dismissed because this Court determined in an earlier case that he is not a qualified individual under the ADA, he did not exhaust his claims with respect to suspension and failure to accommodate, and none of the allegations in Buckner's complaint constitute an adverse employment action; (2) Buckner's Title VII claims should be dismissed because he failed to allege any Title VII claims in his EEOC charge; and (3) any ADA or Title VII claims against the individual defendants fail as a matter of law.

### A.  Standard

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a complaint must present enough facts to state a plausible claim to relief. A plaintiff need not provide exhaustive detail to avoid dismissal, but the pleaded facts must allow a reasonable inference that the plaintiff should prevail." *Mandawala v. Ne. Baptist Hosp.*, 16 F.4th 1144, 1150 (5th Cir. 2021) (internal citation omitted).  In evaluating a motion to dismiss, "[t]he court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Serrano v. Customs & Border Patrol*, 975 F.3d 488, 496 (5th Cir. 2020) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)).  The Court "accept[s] all well-pleaded facts as true and construe[s] the complaint in the light most favorable to the plaintiff." *Heinze v. Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020) (citation omitted).  But the Court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.* (citations omitted).

---

[9] The motion to dismiss does not specify whether dismissal is sought with prejudice. *See* Doc. #14. With respect to the defendants' alternative exhaustion argument as to the individual defendants, their memorandum brief, which the motion to dismiss incorporates by reference, *id.* at 2, states that Buckner's "claims against them should be dismissed with prejudice," Doc. #15 at 13.

## B. Relevant Factual Allegations[10]

In late 2019, Mark S. Buckner, Sr., a man with a "known vision impair[ment]," "was displaced into [a] high school" in the West Tallahatchie School District.  Doc. #1 at 2.  "Since at this high school," Buckner has requested the same accommodation extended to a white female teacher—Ms. Ray—"who had a temporary disability a broken leg over the weekend."  *Id.*  Ray "was allowed to remain in her class, but once [Buckner] requested that same accommodations to not have to report to the cafeteria, [he] was denied."  *Id.*  "A white female math teacher with a disability requested a accommodation, and without hesitation, she was accommodated."  *Id.*

Since a February 6, 2020, meeting, the principal of the school, "Mr. Herman Brownlow," "approached [Buckner] during [his] lunch duty, about … [his] students clean up duties" "[b]ut did not approach Ms. Ray about the same duties."  *Id.* at 2–3.  On February 12, 2020, Buckner e-mailed Principal Berdin, copying superintendent Sherry Ellington, complaining about the February 6 incident with Brownlow.[11]  Doc. #1-1 at PageID 25.  Berdin did not set up a meeting to discuss these concerns.  Doc. #1 at 10.

On February 27, 2020, Buckner e-mailed Berdin and Ellington about a February 26, 2020, altercation between students in his class where he felt his "safety endangered" and "the student's safety were … compromised by … Brownlow" when "Brownlow brought a very disgruntle parent of one of the students involved in the previous incident to [his] classroom door," which "further substantiate [his] claim of retaliation, administrative harassment, and discrimination that have

---

[10] The allegations of Buckner's complaint often are disjointed, repetitive, disorganized in thought or subject, and illogical, and contain spelling, punctuation, or grammatical errors.  Some but not all spelling, punctuation, and grammatical errors are noted or corrected.

[11] Buckner's complaint incorporates by reference many e-mails between himself and various defendants regarding matters occurring both during and after the specific dates in his EEOC charge.  Doc. #1 at 9–14; Doc. #1-1.  The e-mails and other documents Buckner attached to his complaint and incorporated by reference are properly considered. *Serrano*, 975 F.3d at 496.

stemmed from previous documented events." Doc. #1-1 at PageID 23.

On September 15, 2020, Buckner e-mailed Brownlow, copying Spicer and Ellington, complaining that he has "consistently made [Brownlow] aware of the issues [he] was having with [his] computer and [he] informed [Brownlow] that [he was] working with Vocational Rehab to address the camera problem;" he received correspondence from Brownlow "to use a device that does not accommodate [him];" and he "only check out the computer for onsite usage because … Spicer was there to assist [him]." *Id.* at PageID 26–27. Buckner also complained that he "ha[s] been noticing the frequent visits to [his] classroom this week while [his] colleagues have not received as many visits." *Id.* at PageID 27. Brownlow "never responded to [him] complaining of Administrative Harassment, and never set up a meeting to discuss the matter." Doc. #1 at 11.

In an e-mail dated January 7, 2021, Buckner asked Spicer to "provide [him] with a written copy of the observation and feedback in which [she] conducted November 2020: Furthermore [he] need[s] a copy of [her] observation and evaluation schedule." Doc. #1-1 at PageID 36. By e-mail the next day, Spicer said that she "conducted an informal observation on December 7, 2020, and gave [him] pointers for future observations on January 6, 2021 at [his] request," but because she was "unable to return immediate feedback due to (COVID-19) school closing early," she "disregard[ed] this observation" and such did not go on Buckner's file. *Id.* at PageID 37.

"On Monday, May 4, 2021, [d]uring [Buckner's] pre-observation conference Ms. Spicer stated that she was in [his] classroom for 30 minutes but documentation reflects only 20 minutes." Doc. #1 at 3. "According to Ms. Spicer['s] assessment nothing was going on, this was a part of a continued lesson and the students were completing their incomplete (past due) assignments to submit for successful grading." *Id.* Buckner "feel[s] these attacks on [his] teaching are in retaliation of what has been going on in the past"—"because [he] ha[s] filed previous charges of

6

discrimination and ha[s] a pending lawsuit against this organization." *Id.* at 3–4.

On May 19, 2021, Buckner "received a 'Notice of Non- Compliance' claiming failure to submit Parents contact information." *Id.* at 10.

On October 18, 2021, Buckner e-mailed Spicer and Brownlow "asking for an accommodation to aid him with Google classroom or some other media, no meeting was set …." *Id.* at 11. Two days later, Buckner e-mailed Brownlow, copying Ellington, Spicer, the West Tallahatchie School Board of Trustees, the EEOC, and the Department of Justice (ADA), stating that Brownlow "did not … put into place any of the requested accommodations." Doc. #1-1 at PageID 34.

On November 7, 2021, Buckner e-mailed Spicer, copying Ellington, complaining that Spicer "constantly interfered with the day to day management of [his] classroom by making off-the-cuff athurtative [sic] demands," including "giv[ing] pertinent information to [his] teacher assistant" then "blast[ing] [him] for not properly managing her." *Id.* at PageID 31. On November 8, 2021, Spicer sent Buckner "home for voicing his concerns that she was picking on him." Doc. #1 at 12. The same day, Buckner received a "written reprimand" "for … failure to follow the chain of command" from Brownlow. Doc. #1-1 at PageID 33. "Spicer responded back to the email" on November 9, 2021. Doc. #1 at 12.

"On November 10, 2021, the district reprimanded [Buckner] about sending emails complaining about discrimination." *Id.* By e-mail the next day, Buckner asked "to appear before the West Tallahatchie School Board of Trustee in their next regular session to discuss suspension without pay." Doc. #1-1 at PageID 54. In that e-mail, Buckner also stated that Ellington "belittl[e]d [him] and suspend[ed] [him]" "[w]ithout any evidence of misconduct displayed by [him];" and Spicer "has made arbitrary and impulsive decisions that affect [his] students'

productivity and impeded [his] efforts to collect necessary data to increase students' achievement." *Id.* at PageID 55.

On November 15, 2021, Buckner e-mailed Ellington complaining that she did not address his concerns about being "bullied, harassed, and retaliated against" and did not "inform [him] of the date and time that [he] shall appear before the West Tallahatchie School Board of Trustees to address [his] suspension without pay." *Id.* at PageID 38. By letter of the same date, Ellington informed Buckner that he was "provided with a copy of the board's policy concerning grievance procedures for licensed staff along with a written reprimand for [his] failure to follow the chain of command." *Id.* at PageID 39.

By e-mail dated April 12, 2022, Spicer informed Buckner that he was not allowed to take "the student folders home" and that she did "not care what [he did] or who [he] sen[t] [the e-mail] to." *Id.* at PageID 47. By letter dated April 25, 2022, Ellington suspended Buckner for five days without pay for not following the School District's grievance policy. *Id.* at PageID 61. By e-mail dated May 3, 2022, Buckner sent Ellington a copy of the "laws, policies, and procedures from the State of Mississippi (Board of Education and the West Tallahatchie Board of Trustees)." *Id.* at PageID 48.

Buckner filed an EEOC Charge of Discrimination naming the West Tallahatchie School District as the employer he believes discriminated against him. *Id.* at PageID 21–22. On the EEOC charge form, Buckner selected the boxes for "Retaliation" and "Disability;" listed the earliest date of discrimination as February 6, 2020, and the latest date as May 13, 2021; and selected the "Continuing Action" box. *Id.* at PageID 21. The EEOC issued a Determination and Notice of Rights letter to Buckner on July 25, 2023. *Id.* at PageID 17.

## C. Analysis

### 1. ADA claims

The defendants argue that because this Court already determined Buckner is not a qualified individual under the ADA in *Buckner v. West Tallahatchie School District*, No. 3:19-cv-264, 2022 WL 1815987, at *7 (N.D. Miss. June 2, 2022) ("*Buckner I*"), any argument that Buckner is a qualified individual is precluded and all Buckner's ADA claims should be dismissed. Doc. #15 at 4–5. Alternatively, they argue Buckner failed to exhaust administrative remedies as to "any claims related to his alleged suspension or any failure to accommodate" and that all Buckner's ADA claims should be dismissed for failure to allege an adverse employment action as required under the ADA. *Id.* at 5, 7.

#### a. Issue Preclusion

The defendants contend that because Buckner filed "similarly alleged claims under the ADA for discrimination and failure to accommodate" in *Buckner I*, where this Court held that he was not a qualified individual under the ADA, "the Court should not allow [his] ADA claims to proceed because an issue necessary to [his] claim has already been adjudicated, litigated and decided." Doc. #15 at 5. Buckner responds that he "is not alleging temporary termination, … is not alleging he needs an assistant to help monitor his class, …. So clearly these claims are not been [sic] re-litigated as the Defendant would like this court to believe." Doc. #23 at 6. The defendants reply by re-iterating that Buckner's "ADA discrimination or failure to accommodate claims should be dismissed because this Court has already ruled that [he] is not a qualified individual with a disability." Doc. #24 at 3.

"Filing the same suit against different defendants in a piecemeal fashion is inefficient. It wastes litigants' resources and adjudicators time; it encourages parties who lose before one tribunal

to shop around for another; and it increases the chances for conflicting judgments." *United States ex rel. Gage v. Rolls-Royce N. Am., Inc.*, 760 F. App'x 314, 317 (5th Cir. 2019) (citations and internal quotation marks omitted). "To prevent these inefficiencies, courts apply the doctrine of issue preclusion," which "prevents a plaintiff from relitigating identical issues by 'merely switching adversaries,' thereby encouraging the plaintiff to 'join all potential defendants in the first action if possible.'" *Id.* (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329–30 (1979)). Issue preclusion applies when three elements are met:

> (1) the issue at stake must be identical to the one involved in the prior action; (2) the issue must have been actually litigated in the prior action; and (3) the determination of the issue in the prior action must have been a part of the judgment in that earlier action.

*Id.* (quoting *In re Southmark Corp.*, 163 F.3d 925, 932 (5th Cir. 1999)). Regarding the identical issue at stake prong, "relitigation of an issue is not precluded unless the facts and the legal standard used to assess them are the same in both proceedings." *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 290 (5th Cir. 2005) (quoting *Southmark Corp v. Coopers & Lynbrand*, 163 F.3d 925, 932 (5th Cir. 1999)).

In *Buckner I*, Buckner alleged that the West Tallahatchie School District and various school officials[12] "violated the Americans with Disabilities Act ('ADA') by terminating his employment after he exhausted his paid and unpaid leave and by denying him accommodations for his disability and that his termination violated his employment contract." 2022 WL 1815987, at *1. In reviewing the summary judgment argument that Buckner could not establish he was a "qualified individual" under the ADA, the Court observed:

---

[12] In addition to the School District in *Buckner I*, Buckner sued "Superintendent Christopher Furdge; Principal Devora Berdin; Business Manager Madalyn Johnson; School Board President Gloria Carter; Board Secretary Tracey Mims; and Board Members Lucinda Berryhill, Cora Hooper, and Marvin George." 2022 WL 1815987, at *1. This "Court dismissed the ADA claims against the individual defendants because the individual defendants d[id] not satisfy the statutory definition of employer." *Id.* (internal quotation marks and citation omitted).

> A "qualified individual" under the ADA is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." … To prove he is a qualified individual, Buckner must show either he "could perform the essential functions of the job in spite of [his] disability *or* … a reasonable accommodation of [his] disability would have enabled [him] to perform the essential functions of the job."

*Id.* at *7 (quoting 42 U.S.C. § 12111(8); *Claiborne v. Recovery Sch. Dist.*, 690 F. App'x 249, 254 (5th Cir. 2017)) (emphasis in original). The Court found Buckner had not shown that he was a qualified individual as to his ADA failure to accommodate and termination claims because Buckner, based on his own admission, would require a reasonable accommodation to perform the essential teacher function of adequately monitoring students' safety, and because Buckner's proposal of a teacher's assistant as an accommodation "would, at minimum, leave 'performance of … essential duties to other employees,'" such was "beyond the requirements of the ADA." *Id.* at *7 (quoting *Pegues v. Miss. State Veterans Home*, 736 F. App'x 473, 477 (5th Cir. 2018)).

In the present case, Buckner argues he was denied accommodations as a teacher in the School District. But unlike in *Buckner I*, in both his complaint and in his EEOC charge, he seems to take issue with being denied an exemption from non-classroom duties in the cafeteria. Doc. #1-1 at PageID 21. Because in *Buckner I*, the Court's finding that Buckner was not a qualified individual under the ADA relied on assessing the reasonableness of Buckner's proposed teacher's aide accommodation, and because in this case Buckner alleges he requested a different accommodation, the issues in *Buckner I* and the present case are not identical. *See Heston v. Austin Indep. Sch. Dist.*, 71 F.4th 355, 357 (5th Cir. 2023) (issue preclusion "confined to situations where the matter raised in the second suit is identical in all respects with that decided in the first proceeding"). So the Court will not dismiss Buckner's ADA claims based on issue preclusion.[13]

---

[13] The Court need not consider the other elements of issue preclusion since it did not find identical issues at stake in *Buckner I* and this case.

*b. Failure to Exhaust*

In the alternative, the defendants argue Buckner's ADA claims fail because "[b]efore he can bring ADA claims related to an alleged suspension and failure to accommodate, [he] is required to timely file an EEOC Charge related to such allegations and receive a right to sue letter," which Buckner did not. Doc. #15 at 6.

> Regarding suspension, Buckner responds:
>
> by the presentation of the EEOC charge, clearly the words suspension is in the context of the charge, and that document prove that at the time of the suspension, [he] made known to the representatives, and the decision makers of his active EEOC charge, during and after the adverse employment action, and that that knowledge should have let them know it would come out in the eeoc charge.

Doc. #23 at 11. Regarding failure to accommodate, Buckner argues that he "was denied an accommodation, to stay in the classroom for his lack of vision, as the white teacher was allowed to stay in her classroom because of her broken leg;" and that he "create[s] a genuine dispute on the issue of whether the defendant(s) intentionally discriminated against him by reason of his disability, by not providing the google software, mentioned from the tech at the school." *Id.* at 7, 14.

The defendants reply that Buckner "alleges extensive and new allegations that were never alleged in his Charge" in his complaint and response. Doc. #24 at 4. However, the defendants admit that the "sole operative Charge" "alleges one failure to accommodate claim related to an alleged request 'to not have to report to the cafeteria.'"[14] *Id.* (citation omitted).

"Before a plaintiff may file her ADA claim in federal court, she must exhaust her administrative remedies." *Patton v. Jacobs Eng'g Grp., Inc.*, 874 F.3d 437, 443 (5th Cir. 2017).

---

[14] The defendants also argue in their reply that Buckner "confuses and repeatedly conflates one of his prior [EEOC] charges … with the current one in a failed effort to support his current lawsuit." Doc. #24 at 4. Because the operative EEOC charge is attached to the complaint, Doc. #1-1 at PageID 21–22, the Court does not consider any prior EEOC charges in its analysis.

Since the ADA "incorporates by reference Title VII's administrative procedures," *id.*, a plaintiff must file a charge of discrimination with the EEOC within 180 days of "the alleged unlawful employment practice" to exhaust administrative remedies under the ADA, 42 U.S.C. § 2000e-5(e)(1). "The scope of an EEOC complaint should be construed liberally" so the Fifth Circuit interprets what charges are "properly embraced in review of a Title-VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which 'can reasonably be expected to grow out of the charge of discrimination.'" *Pacheco v. Mineta*, 448 F.3d 783, 788–89 (5th Cir. 2006) (quoting *Sanchez v. Standard Brands, Inc.*, 421 F.2d 455, 466 (5th Cir. 2006)). "[T]he crucial element of a charge of discrimination is the factual statement contained therein," *Clayton v. Rumsfeld*, 106 F. App'x 268, 271 (5th Cir. 2004), and "the proper question is whether the charge has stated sufficient facts to trigger an EEOC investigation and to put an employer on notice of the existence and nature of the charges against him," *Simmons-Myers v. Caesars Entm't. Corp.*, 515 F. App'x 269, 272 (5th Cir. 2013) (internal citation omitted). A failure to reference a claim in the charge or allege any facts that would put the EEOC on notice to investigate will nullify that claim. *Pacheco*, 448 F.3d at 792.

In the "Discrimination Based On" section of his EEOC charge, Buckner selected the "disability" and "retaliation" boxes. Doc. #1-1 at PageID 21. In "The Particulars are" section, Buckner states in pertinent part:

> [I was] Denied accommodation under ADA discrimination, retaliation, Harassment (I) my retaliation started February 6, 2020 by Assistant principal Mr. Herman Brownlow. (2) I was displaced into the high school in late 2019, and I am documented man with a known vision impaired disability and Brownlow also knows this. (3).Since at this high school I have requested an accommodation that was a accommodation that was extended to a white female teacher Ms. Ray who had a temporary disability a broken leg over the weekend, and it was her duty to report to be over the students which are ( walkers and car riders) to see the students get in to cars , and see the walkers off, but she was allowed to remain in her class , but once I requested the same accommodations to not have to report to the cafeteria

13

, and was denied. A white female math teacher with a disability requested a accommodation and without hesitation she was accommodated, and I asked that these discriminations cease. This type of retaliation did not start until I was placed in the High School building.

…

I feel these attacks on my teaching are in retaliation of what has been going on in the past. I believe that I am being harassed and retaliated against in violation of the Americans with Disabilities Act of 1990, as amended, because I have filed previous charges of discrimination and have a pending lawsuit against this organization.

*Id.* at PageID 21–22.

Buckner does not mention suspension in his EEOC charge though he alleges two suspensions in his complaint—when Spicer sent him home on November 8, 2021, Doc. #1 at 12, and when Ellington, as the School District's superintendent, suspended him without pay from April 26, 2022, through May 2, 2022, Doc. #1-1 at PageID 61. The Fifth Circuit has held that new allegations in the complaint (but not in the EEOC charge) may be considered exhausted when they are "like or related to allegations contained in the EEOC charge and growing out of such allegations during the pendency of the case before the Commission." *Everett v. Cent. Miss., Inc. v. Head Start Program*, 444 F. App'x 38, 45 (5th Cir. 2011) (alterations and citation omitted). This includes actions related to a pending EEOC charge which occur before the EEOC issues its determination and notice of right to sue letter. *Id.*

In his EEOC charge, Buckner listed the dates of discrimination and retaliation as starting February 6, 2020, and ending May 13, 2021. Doc. #1-1 at PageID 21. The two incidents of alleged suspension did not occur during the dates listed on the EEOC charge and Buckner did not file a separate EEOC charge challenging either suspension. But because the EEOC did not issue Buckner a right to sue letter until July 26, 2023, the pendency of its investigation was still ongoing when both the November 8, 2021, and the April 25, 2022, suspensions allegedly took place. So

14

the pertinent question is whether the two alleged suspensions are like or related to the allegations in Buckner's EEOC charge.

In his EEOC charge, Buckner claims that "attacks on [his] teaching are in retaliation" for "fil[ing] previous charges of discrimination" and because at the time he filed his EEOC charge he had "a pending lawsuit against [the same] organization." Doc. #1-1 at PageID 21–22. Regarding the November 8, 2021, suspension, Buckner claims he was suspended for reporting that Spicer "was picking on him," Doc. #1 at 12, and regarding the April 25, 2022, suspension, Buckner alleges he was informed he was suspended for "not following the chain-of-command" in reporting grievances, "in which [he had] been previously informed," Doc. #1-1 at PageID 61. Buckner does not allege the circumstances associated with the two suspensions are related to the filing of previous charges of discrimination or a pending lawsuit against the same organization, or that such is an attack on his teaching skills. Accordingly, it is not reasonable to presume that an EEOC investigation into such suspensions would have grown out of Buckner's allegations in the EEOC charge as both are related to different circumstances than those alleged in the EEOC charge. To the extent Buckner alleges an adverse employment action related to these suspensions, such claims are not exhausted.[15]

Regarding failure to accommodate, Buckner states in his EEOC charge that he has a vision impairment and that while he has worked "at this high school [he has] requested an accommodation that was a accommodation that was extended to a white female teacher Ms. Ray who had a

---

[15] While Buckner also selected the "continuing action" box on his EEOC charge, Doc. #1-1 at PageID 21, "discrete actions, … are not entitled to the shelter of the continuing violation doctrine," *Doe v. United States*, 853 F.3d 792, 802 (5th Cir. 2017). Discrete acts are "easily identifiable incidents," including "denials of weekend overtime" and "pay-raise exclusion." *Tillman v. S. Wood Preserving of Hattiesburg, Inc.*, 377 F. App'x 346, 349 (5th Cir. 2010). "A suspension is sufficiently similar to … constitute[] a discrete event." *Battle v. UPS*, No. 10-cv-0361, 2011 WL 8202606, *6 (W.D. Tex. Dec. 21, 2011); *see Daneshvar v. Graphic Tech. Inc.*, 237 F. App'x 309, 313-14 (10th Cir. 2007) ("[S]uspension and discharge [are] separate, discrete incidents."). So checking the continuing action box is insufficient to exhaust Buckner's suspension claims.

temporary disability … but once [he] requested that same accommodations to not have to report to the cafeteria, [it] was denied." Doc. #1-1 at PageID 21. In their reply, the defendants admit that Buckner's EEOC charge "alleges one failure to accommodate claim related to an alleged request 'to not have to report to the cafeteria.'" Doc. #24 at 4 (citation omitted). Construing the EEOC charge liberally,[16] the EEOC charge mentions a failure to accommodate a request from Buckner about reporting to the cafeteria, which the defendants seem not to dispute. So the defendants' argument that Buckner failed to exhaust his ADA claims with respect to failure to accommodate regarding the cafeteria accommodation is rejected. *See Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 165 (5th Cir. 1996) (interactive process to investigate EEOC claim triggered by employee's request for accommodation).

However, to the extent Buckner separately argues a failure to accommodate his request to have certain technology in his classroom, such is based on circumstances outside the EEOC charge and thus would not reasonably be expected to follow from the EEOC investigation. *See Jones v. City of Dallas*, No. 3:22-cv-1477, 2024 WL 3207030, at *5 (N.D. Tex. June 6, 2024) ("[A] request for an accommodation based on a particular condition will not exhaust a request for an accommodation for a different condition."). Thus, the defendants' motion with respect to a failure to accommodate claim relating to in-classroom technology will be granted.

Because Buckner exhausted his ADA claims with respect to failure to accommodate a request for cafeteria duty exemption, and the defendants do not assert any other viable argument as to why that claim should be dismissed, the defendants' motion to dismiss that ADA claim for lack of exhaustion will be denied. But because Buckner did not adequately exhaust his ADA claims with respect to suspension or failure to accommodate his request for certain technology in

---

[16] "Charges filed with the EEOC must be liberally construed because they are made by persons who are unfamiliar with the technicalities of formal pleadings." *Tillman v. City of Boaz*, 548 F.2d 592, 594 (5th Cir. 1977).

his classroom, the defendants' motion to dismiss ADA claims related to such will be granted.

### c.  *Adverse Employment Action*

The defendants argue Buckner's "ADA claims should also be dismissed because none of the allegations" in his complaint "amount to an adverse employment action." Doc. #15 at 7. Though a section of Buckner's memorandum brief is titled, "Objections to Claim 'Plaintiff' has Failed to Allege an Adverse Employment Action Under the ADA," and states Fifth Circuit law related to an adverse employment action under such section, Buckner does not make any specific argument regarding the adverse employment issue. Doc. #23 at 15. The defendants reply that "[i]n [Buckner's] Complaint and Response, not only does [he] allege new allegations for which he improperly failed to exhaust administrative remedies, … none of the allegations even amount to an adverse employment action." Doc. #24 at 5.

The only ADA claim alleged by Buckner that requires an adverse employment action is his retaliation claim. *See Stringer v. N. Bolivar Consol. Sch. Dist.*, 727 F. App'x 793, 803–04 (5th Cir. 2018) ("A plaintiff can establish a prima facie case of retaliation under the ADA … by showing that (1) she participated in an activity protected under the statute; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse action.") (internal quotation marks and citation omitted).[17] "Adverse employment action[s]" under the ADA refer to "ultimate employment decisions," like "hiring, granting leave, discharging, promoting or compensating." *Mckay v. Johanns*, 265 F. App'x 267, 268–69 (5th Cir. 2008). The Fifth Circuit applies Title VII case law on the adverse employment action element required by the ADA. *Id.*

---

[17] *Cf. Villarreal v. Tropical Tex. Behavioral Health*, No. 20-4078, 2021 WL 3525023, at *4 (5th Cir. Aug. 10, 2021) ("A plaintiff in the Fifth Circuit must prove the following elements to prevail on a failure-to-accommodate claim: (1) the plaintiff is a qualified individual with a disability; (2) the disability and its consequential limitations were known to the employer; and (3) the employer failed to make reasonable accommodations for such known limitations.").

The clearest allegations of adverse employment actions in Buckner's complaint are the November 8, 2021, and the April 25, 2022, suspensions. However, because Buckner did not exhaust his administrative remedies for the two suspensions, the Court will not consider such for purposes of Buckner's retaliation claim.

Buckner also alleges "attacks on [his teaching]," "a written reprimand" "for … failure to follow the chain of command" from Brownlow, and another written reprimand from the district. However, Buckner fails to allege how either the alleged attacks on his teaching or the alleged reprimands were ultimate employment decisions. *See Myzk v. North East Indep. Sch. Dist.*, 397 F. App'x 13, 15 (5th Cir. 2010) (plaintiff did not adequately allege adverse employment action because she did not show material change in terms and conditions of her employment following alleged action). Because Buckner did not sufficiently allege an adverse employment action, the Court will dismiss his ADA retaliation claim.

### d. *Summary*

The motion to dismiss will be granted as to all Buckner's ADA claims except for Buckner's failure-to-accommodate claim as to the cafeteria accommodation request.

## 2. Title VII claims

The defendants argue Buckner's "Title VII claims should be dismissed because he failed to allege any Title VII claims in his EEOC charge" and "[t]hroughout his Complaint … [Buckner] alleges a Title VII race discrimination claim." Doc. #15 at 9. Although Buckner titled a section of his memorandum brief, "Objections to Claim 'Plaintiff' has failed to Exhaust Administrative Remedy Regarding any Title VII claims," he does not make any arguments regarding exhaustion of his Title VII race discrimination claim in that section. Doc. #23 at 18. Earlier in his memorandum brief, however, Buckner argues that his "report[] in the EEOC communications of

18

emails and documents in this case to Defendant[s], giving notice that he was treated differently than the white teacher, clearly this was race discrimination." *Id.* at 8. The defendants reply that "[i]nstead of properly responding to Defendants' Motion, [Buckner] confusingly strings together a patch work of disconnected cases and citations" so because he "fails to provide a coherent response and he clearly fails to exhaust administrative remedies, his Title VII claims should be dismissed for this reason alone." Doc. #24 at 5–6.

As explained above, a plaintiff alleging workplace discrimination must exhaust his administrative remedies before he may sue under Title VII. *Castro v. Tex. Dep't of Crim. Just.*, 541 F. App'x 374, 379 (5th Cir. 2013). Doing so requires "a plaintiff … file a timely charge with the [EEOC] and then receive a notice of the right to sue." *Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 337 (5th Cir. 2021). While Buckner explicitly alleges retaliation and disability discrimination in his EEOC charge, he did not explicitly allege race discrimination.[18] Doc. #1-1. While an explicit allegation is not required to exhaust administrative remedies, the only allegation Buckner makes in his EEOC charge regarding a potential race discrimination claim is that "[a] white female math teacher with a disability requested a accommodation and without hesitation she was accommodated." Doc. #1-1 at PageID 21. Because Buckner does not indicate his race or anything in his EEOC charge beyond the race of a co-worker, he fails to exhaust his race discrimination claim. *See Redmond v. Univ. of Miss. Ctr.*, No. 3:18-cv-667, 2020 WL 13689475, at *3 (S.D. Miss. Mar. 23, 2020) (charge indicating race of co-worker without indicating race of plaintiff is insufficient to exhaust race discrimination claim); *Castro*, 541 F. App'x at 379 (dismissal due to failure to exhaust appropriate when plaintiff alleges no "incidents of discrimination based on" race). Accordingly, Buckner failed to exhaust his Title VII race discrimination claims and the

---

[18] It appears that Buckner also did not allege his race in his complaint.

motion to dismiss such claims will be granted.[19]

### 3. Claims against individual defendants

Regarding the individual defendants, the defendants argue:

> [Buckner's] claims under Title VII and the ADA against the following eleven Individual Defendants: Mrs. Ellington, Superintendent; Mr. Harges, Principal; Ms. Berdin, Former Principal; Ms. Spicer, Assistant Principal; Madalyn Johnson, Business Manager; Marvin George, President Of Board; Mrs. Edith Gipson, Board Member; Mrs. Sharon Bailey, Board Member; Mrs. Lucinda Berryhill, Board Member; and Marvin George, Board Member (collectively 'Individual Defendants') …. fail as a matter of law.

Doc. #15 at 11. Buckner responds only by titling a section of his memorandum brief, "Objections to Claim 'Plaintiff' has Failed to Exhaust his Administrative Remedies Against the Individual" and citing unrelated Fifth Circuit case law beneath such heading. Doc. #23 at 22. The defendants reply that Buckner "again confusingly strings together another series of cases, none of which are applicable to the relevant issues, and none of which address his failure to state a claim." Doc. #24 at 6.

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer … to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000(e)-2(a)(1). Under Title VII, an employer is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person." *Id.* at § 2000(e)(b). Title VII claims are properly dismissed when brought against supervisors or fellow employees because Title VII relief "is only available against

---

[19] Because the Court found Buckner failed to exhaust his Title VII race discrimination claims, it declines to address the defendants' alternative argument that Buckner failed to allege an adverse employment action under Title VII.

an employer." *Umoren v. Plano Indep. Sch. Dist.*, 457 F. App'x 422, 425 (5th Cir. 2012). "While Title VII's definition of the term employer includes 'any agent' of an employer, Congress's purpose was merely to import *respondeat superior* liability into Title VII" so "a plaintiff is not entitled to maintain a Title VII action against both an employer or agent in an official capacity." *Smith v. Amedisys Inc.*, 298 F.3d 434, 448–49 (5th Cir. 2020).

The ADA prohibits discrimination by a "covered entity" on the basis of a disability. 42 U.S.C. § 12112(a). "The term 'covered entity' means an employer, employment agency, labor organization, or joint labor-management committee." *Id.* at § 12111(2). "Employer" is defined as "a person engaged in an industry affecting commerce who has 15 or more employees ... and any agent of such person." *Id.* at § 12111(5)(A). Although the Fifth Circuit appears not to have addressed the issue of individual liability under the ADA's employment discrimination provisions, courts in this circuit have consistently concluded that:

> in light of (a) the similarities between the definition of "employer" in Title VII and the ADA, (b) the similar purposes of the two statutes, (c) the Fifth Circuit's consistent holdings that individuals cannot be held liable under Title VII in either their individual or official capacities, and (d) the weight of authority outside of the Fifth Circuit, individuals are not subject to liability under Title I of the ADA.

*Franklin v. City of Slidell*, 936 F. Supp. 2d 691, 703 (E.D. La. 2013) (footnote omitted); *see also Lewis v. DBI Servs.*, No. 19-cv-662, 2020 WL 248703, at *3 (W.D. Tex. Jan. 15, 2020) (collecting cases); *Harris v. Clay Cnty.*, 448 F. Supp. 3d 629, 637 (N.D. Miss. 2020).

Ellington, Harges, Johnson, and Spicer are all administrators or school board members and thus do not satisfy the statutory definition of employer under either Title VII or the ADA. Accordingly, Buckner's ADA and Title VII claims against these individual defendants fail[20] and

---

[20] The defendants argue in the alternative that Buckner failed to exhaust administrative remedies against the individual defendants. Doc. #15 at 12. Because the Court finds no cognizable cause of action against the individual defendants under Title VII and the ADA, it declines to address such argument.

the motion to dismiss such claims will be granted.[21]

## IV
## Helper/Jury Motion

Buckner requests that the Court allow him to "bring a personal helper" to assist him during his trial and to "make the non-jury trial … [a] jury trial." Doc. #21 at 1. Because Buckner failed to file a memorandum brief with authority supporting the relief he requests and because, regardless, the Court declines to address the logistics of a potential trial at this stage in the litigation, the motion will be denied without prejudice.

## V
## Conclusion

In accordance with the rulings above:

1.    Buckner's Surreply Motion [27] is **DENIED**.

2.    The defendants' motion to dismiss [14] is **GRANTED in Part and DENIED in Part**. It is GRANTED to the extent that all Buckner's ADA claims against the School District, Ellington, Harges, Johnson, and Spicer—except for his ADA failure to accommodate claim against the School District as to the cafeteria accommodation request—and all Buckner's Title VII claims against the School District, Ellington, Harges, Johnson, and Spicer are dismissed with prejudice. It is DENIED in all other respects.

3.    Buckner's Helper/Jury Motion [21] is **DENIED without prejudice**.

**SO ORDERED**, this 12th day of August, 2024.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**

---

[21] As mentioned above, the defendants ask the Court to dismiss the claims against the individual defendants with prejudice in an alternative argument in their memorandum brief and not in the motion to dismiss. But since Title VII and the ADA do not allow for claims to be brought against non-employers, in the interest of efficiency, the Court will dismiss with prejudice the claims against Ellington, Harges, Johnson, and Spicer because the defects in Buckner's complaint are incurable. *See Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000) ("Although a court may dismiss the claim, it should not do so without granting leave to amend, unless the defect is simply incurable.").